# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 17, 2000 Session

## HAROLD ANGUS v. WESTERN HERITAGE INSURANCE COMPANY

**Direct Appeal from the Chancery Court for Madison County**
**No. 51235     Joe C. Morris, Chancellor**

_____

**No. W2000-00902-COA-R3-CV - Filed November 13, 2000**

_____

This appeal arises from a dispute between Contractor and Insurer over insurance coverage during a building demolition project. During the project, Contractor knowingly damaged an adjacent structure. When suit was brought against Contractor by the owners of the adjacent structure, Insurer refused coverage. The trial court found Insurers' policy and endorsement to be ambiguous and thus unenforceable. We disagree, finding that the policy and endorsement are not ambiguous and that they clearly state that Insurer will provide no coverage for intentional damage to other structures. We reverse the trial court's ruling and find that Insurer is not liable under the policy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

John S. Little, Jackson, Tennessee, for the appellant, Western Heritage Insurance Company.

Phillip L. Davidson, Nashville, Tennessee, for the appellee, Harold Angus.

**OPINION**

In 1992, Mr. Harold Angus purchased a general liability insurance policy from Western Heritage Insurance Company (Western). In 1993, the City of Jackson awarded him a contract to demolish a building known as Buddie's Pawn Shop. As per city regulations, Mr. Angus was required to have general liability insurance before beginning work. As he had done several times in the past, Mr. Angus purchased an endorsement to his 1992 general liability policy. This endorsement covered the "wrecking of buildings," specifically Buddie's Pawn Shop.

Buddie's Pawn Shop was a building that had a shared wall or "party wall" with a second structure. All parties understood that the second structure would most likely be damaged in some way as the demolition project would require the removal of this party wall. Indeed, after the

completion of the demolition, the owners of the adjoining structure alleged that they suffered heavy damage to both their building and their business as a result of the project. They claimed they were eventually forced to close due to this damage and brought suit against Mr. Angus for their losses.

Mr. Angus sought coverage under his insurance policy with Western who refused to cover him under these circumstances. Western claimed that Mr. Angus had intentionally and knowingly damaged the adjoining property and thus was not covered under their policy. Mr. Angus claimed that Western had modified the coverage to include such damage. In addition, he claimed that the endorsement he purchased rendered the original contract ambiguous and unenforceable. Mr. Angus also asserted that the extent of the damages was unforeseen and thus he should be covered under the policy.

The trial court found that insurance agents acting on behalf of Western had modified the terms of the original contract by endorsing the demolition project and accepting additional premiums. The court reasoned that, as Western had endorsed a project where all parties knew damages would most likely result, this endorsement rendered terms of the original contract denying coverage ambiguous and unenforceable. In addition, the trial court found that the actions by Mr. Angus in his demolition did not produce foreseeable damages. As such, the court found Western liable under its insurance policy for the damages caused by Mr. Angus's demolition.

The issue, as we perceive it, is as follows:

Did the trial court err in failing to find that the policy clearly excluded coverage for the actions of Mr. Angus which gave rise to this suit?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d). The interpretation of a written contract is a matter of law, and thus, no presumption of correctness in its interpretation exists. *See NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791 (Tenn. Ct. App. 1997).

**Policy Coverage**

The parties' respective rights and obligations are governed by their contract of insurance whose terms are embodied in the policy. As with any other contract, our responsibility is to give effect to the expressed intention of the parties, *Blaylock & Brown Construction, Inc. v. AIU Insurance Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App.1990), by construing the policy fairly and reasonably, *Demontbreun v. CNA Insurance. Cos.*, 822 S.W.2d 619, 621 (Tenn. Ct. App.1991);

***Dixon v. Gunter***, 636 S.W.2d 437, 441 (Tenn. Ct. App.1982), and by giving the policy's language its common and ordinary meaning. ***Tata v. Nichols***, 848 S.W.2d 649, 650 (Tenn. 1993); ***Parker v. Provident Life & Accident Ins. Co.***, 582 S.W.2d 380, 383 (Tenn. 1979). We are not at liberty to rewrite an insurance policy simply because we do not favor its terms or because its provisions produce harsh results. In the absence of fraud, overreaching, or unconscionability, the courts must give effect to an insurance policy if its language is clear and its intent certain. ***Quintana v. Tennessee Farmers Mut. Ins. Co.***, 774 S.W.2d 630, 632 (Tenn. Ct. App.1989). ***Black v. Aetna Ins. Co.***, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995).

Upon examination of Mr. Angus's 1992 general liability policy, it is clear from the language of the policy that it provided coverage only for an "occurrence." In the policy, an occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The policy also excluded coverage for "moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support." However, the 1993 endorsement altered the terms of the general liability policy by removing the exclusion providing no coverage for the demolition of buildings. The endorsement states "[i]t is agreed that [the exception to coverage under the general liability policy] does not include bodily injury or property damage arising out of . . . any operation, described in this endorsement, conducted by or on behalf of the named insured. Description of Premises and Operations: WRECKING OF BUILDINGS." As such, it is clear that Mr. Angus was covered under his 1992 general liability policy as it was altered by the 1993 endorsement for the "wrecking of buildings."

However, further study of the endorsement reveals that, in addition to changing the coverage under the general liability policy, the endorsement also included the following statement: "All other Terms and Conditions of [the original general liability] Policy remain unchanged." It is thus clear from the plain language of the endorsement that the endorsement (1) modified the exclusions of the original general liability policy to allow for the demolition of buildings and (2) maintained all other terms and conditions of the original policy. We find no ambiguity in the language of this endorsement. The endorsement clearly intended that Mr. Angus could demolish buildings and have liability coverage for "occurrences" that arose during the demolition. However, the endorsement did not alter the general liability policy's exclusion of coverage for intentional or expected damages.

The evidence is undisputed that Mr. Angus intended to remove the party wall during his demolition of Buddie's Pawn Shop. It is also undisputed that Mr. Angus understood that the very act of removing this wall would most likely result in damage to the adjoining structure. Thus, the property damage was expected and intended from the standpoint of Mr. Angus. By the language of the general liability policy as referred to by the endorsement, any damage caused by an intentional act could not be an "occurrence." As the damage was not caused by an occurrence, it was not covered under the endorsement issued by Western.

We find no ambiguity in the language in either the endorsement or the policy. The language in both documents is clear, and the intent of the parties is easily ascertainable. As such, we are

required to give the endorsement its intended effect. The trial court's finding that Western is liable for the damage caused by Mr. Angus's intentional actions during his demolition project is hereby reversed.

## Conclusion

Based on the foregoing conclusions, we hereby reverse the trial court's judgment. Cost on appeal are assessed against the appellee, Harold Angus, and his surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE