IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2009 Session

## JANIS OLIVER CUMMINS v. ROY B. CUMMINS

**Appeal from the Chancery Court for Williamson County**
**No. 32668     Jeffrey S. Bivens, Judge**

_____

**No. M2009-00386-COA-R3-CV - Filed July 29, 2010**
_____

Husband appeals the trial court's decision that Wife's payment of taxes, insurance and association dues on houses titled jointly were contributions of separate property to the homes which, under a premarital agreement, entitled her to a credit before Husband could recover appreciation on those homes. The agreement provides for the treatment of a party's contributions of separate property to jointly held property, and we share the trial court's interpretation of those provisions. Accordingly, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Branch Heard Henard, III, Nashville, Tennessee, for the appellant, Roy B. Cummins.

Rose Palermo, Nashville, Tennessee, for the appellee, Janis Oliver Cummins.

### OPINION

The only question in this appeal involves the allocation, in accordance with the terms of the parties' prenuptial agreement, of appreciation on two homes acquired during the marriage. The parties stipulated to the validity of the agreement, but disagree as to the proper interpretation of the agreement and its application to the facts of this case.

# I. BACKGROUND

Mr. and Ms. Cummins wed in the fall of 2000. At that time, the parties entered into a prenuptial agreement that governed, among other things, the distribution of property in the event of a divorce. Neither party was employed during the marriage. Rather, Ms. Cummins fully supported the couple with investment income stemming from her separate assets.

During the marriage, Ms. Cummins paid cash for two residences that she then had titled in both the parties' names. First, in approximately January of 2003, she purchased a condominium in Taos, New Mexico, for three hundred sixty-six thousand nine hundred thirty-nine dollars ($366,939). Second, in approximately February of 2005, Ms. Cummins purchased the home where the parties resided in Franklin, Tennessee, for one million seven hundred nine thousand six hundred eighty-six dollars ($1,709,686). At the time of the divorce hearing, the parties stipulated that the Taos house was valued at five hundred thousand dollars ($500,000) and the Franklin house was valued at one million seven hundred fifty thousand dollars ($1,750,000). Consequently, during the time the houses were owned by the parties during the marriage, the Franklin home appreciated $40,132 and the Taos house appreciated $133,061, with the appreciation at issue totaling $173,193.

During the time the couple owned the houses, Ms. Cummins expended substantial sums of money to pay for the property taxes, insurance premiums, and association dues related to these two properties. These expenses totaled seventy-three thousand eight hundred twelve dollars ($73,812) for the Tennessee property and sixty-eight thousand three hundred twenty-five dollars ($68,325) for the New Mexico property.[1]

Ms. Cummins filed a Complaint for Divorce in July of 2006. Six months later, she also filed a motion for Mr. Cummins to vacate the marital home. In response, Mr. Cummins filed a Motion for *Pendente Lite* Support. The parties resolved their motions by an Agreed Order under which Mr. Cummins vacated the residence. In exchange, Ms. Cummins provided him with twenty-six hundred dollars ($2,600) per month until the couple's divorce and ten thousand dollars ($10,000) for assistance with his moving expenses. Under the Agreed Order, Ms. Cummins was to receive credit for these monies against any amount Mr. Cummins may be awarded from the dissolution of their marriage. It is undisputed by the parties that the credit due Ms. Cummins is sixty-nine thousand eight hundred dollars ($69,800).

---

[1]Although the exact amount of the expenses are unclear from the record, these are the amounts acknowledged by Mr. Cummins in his brief on appeal

The issue on appeal stems from the trial court's findings about whether Mr. Cummins was entitled to recover under the prenuptial agreement for half of any appreciation on the two homes. The trial court found that under their agreement Ms. Cummins was entitled to award of both the Franklin and Taos homes. Mr. Cummins does not dispute this finding on appeal. As to the appreciation, the trial court gave Ms. Cummins a credit for the $69,800 in support, which Mr. Cummins also does not dispute. However, Mr. Cummins does dispute the trial court's treatment of the taxes, insurance, and homeowner association fees on the two houses.

## II. ISSUE PRESENTED ON APPEAL

Mr. Cummins argues on appeal that the court erred in finding that half of appreciation due him must first be reduced by the property taxes, insurance premiums, and association dues on the Tennessee and New Mexico properties paid by Ms. Cummins.

## III. STANDARD OF REVIEW

In Tennessee, valid prenuptial agreements apply to govern distribution of a divorcing couple's property. T.C.A. § 36-3-501. Consequently, the parties are correct in their assertions that the prenuptial agreement and its interpretation are dispositive of the outcome of this dispute.[2]

Tennessee law gives effect to prenuptial agreements in the same manner as other contracts. *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App.1996). Our courts construe them in accordance with applicable statutes on the distribution of marital property and under rules of construction that are applicable to contracts generally. *Id.* at 373. Ultimately, the court's task is to discern and to honor the intent of the contracting parties. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975); *Wilson*, 929 S.W.2d at 373. "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002).

In ascertaining and giving effect to the contracting parties' intentions, where the parties have reduced their agreement to writing, courts look to the parties' intentions as reflected in the language of contract itself. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). "The intent of the parties is presumed to be that specifically expressed in the body of the contract . . . ." *Planters Gin Co.*, 78 S.W.3d at 890. Therefore,

_____

[2]In pertinent part, the agreement provides, "The parties agree that this Agreement shall govern the division of property between them in event of their divorce or legal separation, and that neither party shall request a court having equity jurisdiction to divide, distribute, or assign property between them."

the court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580. Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes. *Planters Gin Co.*, 78 S.W.3d at 890. Stated another way, where terms of the agreement are clear and unambiguous, the courts must wholly ascertain the parties' intent from the plain and ordinary meaning of those terms. *Bob Pearsall Motors, Inc.,* 521 S.W.2d at 580; *Ballard v. North American Life & Casualty Co.,* 667 S.W.2d 79, 82-83 (Tenn. Ct. App.1983); *Sutton v. First Nat'l Bank,* 620 S.W.2d 526, 530 (Tenn .Ct. App.1981).

Ultimately, the trial court's findings of fact are presumed correct unless a *de novo* review of the record produces a preponderance of evidence to the contrary. Tenn. R. App. P. 13(d). However, no such presumption of correctness is afforded to the trial court's conclusions of law. *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000) The question of interpretation of a contract is a question of law. *Guiliano*, 995 S.W.2d at 95. Therefore, the trial court's interpretation of a contractual document is not entitled to a presumption of correctness on appeal. *Id*.; *Angus*, 48 S.W.3d at 730. This court must review the document ourselves and make our own determination regarding its meaning and legal import. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993). Our review is governed by the well-settled principles set out above.

## IV. ANALYSIS

The provision in the agreement that governs in the event of divorce is found at Paragraph 4 and provides, in pertinent part:

> In the event of an Order of Divorce . . . each party shall be solely entitled to a return of his or her Separate Property and an equal division of the Marital Property . . . The parties acknowledge that the provisions contained in this Agreement for the equal division of Marital Property **after restoration to each party of his or her Separate Property** shall constitute an acceptable property division . . . (emphasis added).

There is no disagreement herein that the parties agreed to split evenly any Marital Property, as that term is defined in the agreement. The language "after restoration to each party of his or her Separate Property" is relevant to the definition of the Marital Property to be divided. It is consistent with another provision of the agreement, Paragraph (1)(b), which defines Marital Property in pertinent part as follows:

-4-

. . . the term "Marital Property" shall include any property acquired jointly by the parties . . . and titled in their joint names, . . . and all income, growth and appreciation realized on all such property . . . . The parties . . . reject the concept prohibiting existence of a duality or combination of Marital Property and Separate Property in the same asset and, to the extent that tracing of Separate Property can be established, **it is the parties' intention to return to the person contributing the Separate Property the value of his or her contribution before the division of the remainder of the marital asset.** After return to each party of his or her Separate Property contribution, all Marital Property shall be equally divided. (emphasis added).

There is no dispute that the two houses at issue are Marital Property as defined in the agreement, pursuant to the paragraph quoted above, because they were jointly titled. The parties agree that the dispute between them is over the distribution of the appreciation in value of the houses.[3] There is no dispute that Ms. Cummins is entitled to the return of her separate funds that were used to make the initial purchase of the houses and that such funds are to be subtracted from the appreciation before division of Marital Property between the parties.

At issue herein is the interpretation and application of the language highlighted above with regard to other payments made on the property by Ms. Cummins from her separate funds. It is undisputed that Ms. Cummins paid a total of $142,137 from her separate assets for property taxes, insurance premiums, and association dues on the two houses. Ms. Cummins asserts that the plain language of the agreement requires that this amount be subtracted from the gross appreciation of the two houses before the remaining amount is divided between the parties.

Because the parties were able to identify the amount of her separate money Ms. Cummins paid toward taxes, insurance, and association fees, there can be no dispute that "tracing of Separate Property [her money] can be established," which is the prerequisite for return of contributions of separate property to joint property.

Ms. Cummins argues that her payment of the taxes, insurance, and association fees were "contributions" of her separate property, the "value" of which is to be returned to her, relying on the language that "it is the parties' intention to return to the person contributing the Separate Property the value of his or her contribution before the division of the remainder of the marital asset."

_____

[3]Mr. Cummins concedes that he is not entitled to the homes themselves, only arguing that the appreciation is marital property that must be split between them.

Mr. Cummins seems to argue that Ms. Cummins' acquisition costs alone constitute such contributions and that the other identified necessary expenses associated with the homes do not qualify as "contributions." We disagree.

The agreement expressly provides for the return to a party the value of that party's contribution to marital property of his or her separate assets to the extent the contribution or its value can be traced or identified. The agreement speaks in terms of "contribution," and that term is not defined therein. The term has a broad meaning in general usage.[4] "Contribution" is not limited by any language in the agreement to purchase price or acquisition expenses. The language of the agreement suggests that the parties did not intend that contributions be limited to the costs of acquisition. They could have explicitly said so had that been their intention.

It is clear that the parties' agreement envisioned that each party would get credit for their separate property contributions to the fullest extent. Ms. Cummins does not seek return of any money she spent on maintenance or improvements to the homes. Instead, the expenses at issue, taxes, insurance, and association fees, were required to be paid in order for the parties to retain ownership (which was joint) or to protect the investment in the homes. Without Ms. Cummins' contribution of her separate funds to pay those costs, the parties would not have owned the houses at the time of divorce, and there would be no appreciation to divide.

Given the broad nature of the term "contribution," the statement of intent in the agreement, and the purpose of the payments, we agree with the trial court that the enumerated expenses paid by Ms. Cummins, which were expenses necessary to retain ownership of the homes, are included within the term "contribution" as used in the parties' agreement.

Mr. Cummins also asserts that, by placing the property in both their names, Ms. Cummins gave her husband one half of any resulting appreciation, and that she later acknowledged this gift. He makes an alternate argument that this gift of Ms. Cummins takes the transaction out of the purview of their prenuptial agreement. By the terms of the prenuptial agreement, Ms. Cummins having the properties titled in both names made them Marital Property, as defined in the agreement. While one might describe the effect of that decision as a gift, the scope and terms of that gift are determined by the agreement. In other words, his wife may have gifted him with one half of the houses, since they became Marital Property when they were deeded jointly, but the value of that Marital Property is

---

[4] Even in Black's Law Dictionary(4th ed.), "contribute" is defined, *inter alia*, as lending assistance or aid or giving something to a common purpose.

determined by the agreement's provisions on the division of property in the event of divorce.

The total appreciation of the two houses (subtracting original purchase price from value at date of divorce) was $173,193. When Ms. Cummins' contribution to the houses in the form of payment of taxes, insurance, and association fees, totaling $142,137, is subtracted, the remaining appreciation subject to equal division is $31,056. Half of that amount is $15, 528.

Therefore, Mr. Cummins share of the remaining Marital Property would be $15, 528. However, he agreed that his share would be reduced by the amount of pendente lite support he received. The parties agree that the total of that support was $69,800. Therefore, under the terms of the agreement, Mr. Cummins is not entitled to receive any money as division of the Marital Property at issue.

We affirm the trial court.

## V. FRIVOLOUS APPEAL

Ms. Cummins also petitions this Court to review Mr. Cummins' appeal as potentially frivolous, for which she may be awarded various damages. "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001).

Although this Court rules against Mr. Cummins, we do not find that his argument and the appellate record he supplied are devoid of merit such that it had no reasonable chance of success. Consequently, the circumstances of his appeal do not merit a finding as frivolous or a related award for damages.

## VI. CONCLUSION

We affirm the chancery court's order in this matter. Costs of this appeal are taxed to the appellant, Mr. Roy B. Cummins.

_____
PATRICIA J. COTTRELL, P.J., M.S.